# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4905-16T1

J.G.,

    Plaintiff-Appellant,

v.

A.B.,

    Defendant-Respondent.

_____

Argued September 13, 2018 – Decided  October 2, 2018

Before Judges Ostrer and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FD-13-1086-16.

Steven M. Cytryn argued the cause for appellant.

A.B., respondent, telephonically argued the cause pro se (Jasmine N. Story, on the brief).

PER CURIAM

Plaintiff J.G. appeals from the trial court's June 13, 2017 order declaring

defendant A.B. the parent of primary residence of the parties' child, N.B., born

in July 2014; declaring plaintiff the parent of alternate residence; granting defendant's request to relocate with N.B. to Washington State; and establishing a parenting time schedule.[1]  Judge Angela White Dalton entered the order after presiding over a lengthy plenary hearing, and set forth her reasons in a comprehensive written opinion.

This is not a typical "removal" case, as defendant and the child had ties to Washington State before their residence in New Jersey.  The trial court reviewed those facts in detail.  In summary, the parties began a relationship over the internet as early as 2011.  Defendant was then fourteen years old, and was living with her mother in Washington State.  Plaintiff was almost thirty years old, and living in New Jersey.  Both parties lied about their age during those early communications.  Plaintiff eventually visited defendant in Washington, and they engaged in an intimate relationship.  Defendant discovered she was pregnant in November 2013, when she was sixteen.  Defendant gave birth in Washington, and N.B. and defendant resided with defendant's mother until March 2015.  Plaintiff did not see the child during those first eight months.  Upon turning eighteen, defendant went to New Jersey with N.B. to live with plaintiff.

---

[1]  The court's order also awarded defendant child support.

A-4905-16T1

However, the relationship was tumultuous. Defendant claimed that plaintiff was aggressive, violent and controlling. She eventually returned to Washington with N.B. in April 2016, thirteen months after they arrived in New Jersey. By that point, New Jersey had jurisdiction over custody. Plaintiff secured an order for N.B.'s return to New Jersey. Defendant returned as well, to litigate permanent custody. By January 26, 2017, the parties agreed to joint legal custody of N.B. The parties proceeded to trial to determine physical custody and a final parenting schedule.

In making what it deemed "an initial custody determination intertwined with a relocation request," the trial court carefully applied each of the factors set forth in N.J.S.A. 9:2-4.[2] The court made credibility findings. For example,

---

[2] N.J.S.A. 9:2-4(c) states:

> In making an award of custody, the court shall consider but not be limited to the following factors: the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs

the court found defendant credibly testified that plaintiff drank excessively. The court did not find credible plaintiff's explanations for numerous incidents of domestic abuse that defendant alleged, and corroborated with tape recordings. Although the court found no evidence that either party posed a risk of harm to N.B., the court found the potential for future instances of abuse between the parties and the child uncertain.

The court found that defendant offered N.B. a stable home life in Washington State, enhanced by the commitment of her mother to assist her in raising N.B. The court acknowledged that defendant was a young mother, but noted that she cared for N.B. for his first eight months without plaintiff's help. On the other hand, while plaintiff was gainfully employed and could provide a stable living environment in New Jersey, the court found plaintiff to be impulsive and easily aggravated. Balancing the statutory factors, the court

of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children. A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.

A-4905-16T1

concluded that N.B.'s best interests would be served by granting defendant primary residential custody of N.B. in Washington State.

In arguing on appeal that the trial court erred, plaintiff challenges the court's evaluation of the evidence, and its ultimate assessment of N.B.'s best interests. For example, he contends the trial court mistakenly credited defendant's commitment to abide by court orders, as she had disobeyed New Jersey court orders in the past; and mistakenly credited defendant's mother's commitment to assist defendant in Washington, because she did not travel to New Jersey to do so. He contends that his employment history should weigh in his favor, while defendant's lack of one should weaken her claim.

However, our review is limited. We defer to the Family Part's fact findings that are rooted in its familiarity with the case, its opportunity to make credibility judgments based on live testimony, and its expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 411-13 (1998). In particular, conclusions of the Family Part regarding child custody are "entitled to great weight and will not be lightly disturbed on appeal." Sheehan v. Sheehan, 51 N.J. Super. 276, 295 (App. Div. 1958). We shall not disturb the trial court's findings unless "they went so wide of the mark that the judge was clearly mistaken." New Jersey Div. of Youth & Family Servs. v. G.L., 191 N.J. 596,

5

605 (2007). We are not free to substitute our judgment for the trial court. Schwartz v. Schwartz, 68 N.J. Super. 223, 232 (App Div. 1961). We owe no special deference to the trial court's legal conclusions. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Applying this standard of review, we affirm the trial court's order substantially for the reasons set forth in Judge White Dalton's cogent written opinion. The trial court fulfilled its obligation to consider the factors identified in N.J.S.A. 9:2-4, and to set forth its reasons in accord with N.J.S.A. 9:2-4(f). See Kinsella v. Kinsella, 150 N.J. 276, 316-17 (1997); Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). Plaintiff essentially asks us to disturb the trial court's weighing of the evidence, and adopt his instead. That, we shall not do.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4905-16T1